COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Friedman and Senior Judge Petty


FRANK MCKAY DEVONISH, JR.

MEMORANDUM OPINION*

v.        Record No. 1296-24-1

PER CURIAM

AUGUST 12, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

(Roger A. Whitus; Slipow & Robusto, P.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Susan Hallie Hovey-Murray,
Assistant Attorney General, on brief), for appellee.


A jury convicted Frank McKay Devonish ("appellant") of possession of a firearm by a

convicted violent felon, in violation of Code § 18.2-308.2.[1]  On appeal, appellant argues that the

trial court erred in affirming the verdict because there was insufficient evidence to prove that he

possessed a firearm.  Finding no error, we affirm the trial court's judgment.[2]

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,'

the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)).  "That principle requires us to

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The Commonwealth nolle prossed charges of malicious wounding, in violation of Code
§ 18.2-51, and use of a firearm in commission of a felony, in violation of Code § 18.2-53.1.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit."  *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

At about 7:40 in the morning on October 15, 2021, Hannah Baker stopped at an Exxon in Virginia Beach to get gas. As she was leaving, she heard a single gunshot. She noticed a man leaning into a white car that was also at the Exxon. As soon as the man stood up, the white car sped off, and the man got into a gray car and left as well. Baker did not recall seeing him holding a firearm. Baker took photographs of the gray car as it was leaving.

Between 7:30 and 7:40 that same morning, Jaquan Gumbs drove Shaquan Gordon to the same Exxon to buy marijuana from appellant. When they arrived, Gordon called appellant, who told Gordon to get into appellant's car. Gordon refused. After a few minutes, appellant walked up to the passenger side of Gumbs's car, where Gordon was sitting with the passenger window rolled down. Gordon saw a pistol handle hanging out of appellant's right pocket. Appellant handed Gordon half an ounce of marijuana instead of the two ounces they had previously agreed upon. Gordon handed money to appellant, who "threw the money back" at Gordon and stated, "[t]his ain't what I'm here for." Appellant then leaned into the car and shot Gordon in his chest. The bullet went through Gordon's chest and exited out his back, close to his spinal cord.

Police searched Gumbs's car and recovered a single shell casing from the front passenger seat and a bullet from the rear seat floorboard. They later searched the gray car, of which appellant was the registered owner. No firearm was found in either car.

At trial, the Commonwealth introduced a certified copy of a sentencing order related to appellant's prior conviction for malicious wounding, as well as video footage from the Exxon the morning of October 15. The video showed appellant getting out of a gray car, then walking up to a white car and leaning into the passenger side window. Appellant could be seen taking a small,

dark object out of his right pocket, the same pocket in which Gordon had observed a pistol handle. Appellant reached his right hand towards the passenger side window, then jumped back suddenly. The white car then sped off while appellant returned the object to his right pocket, returned to the gray car, and left the Exxon. Enlarged still images taken from the video were also shown to the jury.

Gordon confirmed that the video depicted the transaction and subsequent shooting. He identified appellant as the shooter and confirmed that he had written "He Shot Me" on the photographs of appellant that the police showed him. Gordon testified that while he originally told Gumbs that he planned to bring a weapon with him on October 15, he did not actually bring one, and to his knowledge there was no firearm in Gumbs's car. He also admitted that he had thought about robbing appellant, but denied that he had any intent to do so that day. Gordon further admitted that he was a convicted felon.

Appellant moved to strike the evidence, arguing that it was insufficient to prove his "knowing and intentional possession of the firearm." Defense counsel asserted that there was "some testimony in dispute even with Mr. Gordon regarding the possession of a gun" and that though the Commonwealth argued the video footage "shows [appellant] bringing the firearm, I don't think that's clear on the video. It shows him leaning into a window, and something happening at that point, but I think that is in dispute." The trial court denied the motion.

Testifying for the defense, Gumbs stated that he recalled seeing a firearm in Gordon's lap during the encounter. Gumbs heard a gunshot, but did not see appellant with a firearm. Gumbs denied touching a firearm that day. He also denied seeing Gordon pointing the firearm at himself, or touching or shooting any firearms that day.

Appellant renewed his motion to strike, arguing that "the evidence is not overwhelming for showing that [appellant] was in possession of a firearm prior to going to the vehicle" and that

there was "no evidence to . . . prove beyond a reasonable doubt that whatever [appellant] had in his hand when he's coming back from that vehicle was a firearm." Defense counsel pointed out that neither Baker nor Gumbs saw appellant with a firearm and contended that there was no proof that he possessed anything that met the relevant definition of a "firearm."

The trial court denied the motion, reasoning that "unless I can ignore on some legal basis the testimony of Mr. Gordon in conjunction with the other evidence, I don't know how I can conclude as a matter of law that there's no evidence of a firearm." Defense counsel responded that "[t]here are certainly credibility issues for Mr. Gordon, but to just as a matter of law . . . disregard his statement, I don't think I have that."

The jury subsequently convicted appellant of possessing a firearm as a convicted violent felon. This appeal followed.

ANALYSIS

Appellant argues that the evidence failed to establish that he unlawfully possessed a firearm.[3] Specifically, he contends that the evidence failed to prove that he possessed the firearm

---

[3] Appellant also argues that Gordon's testimony was "incredible as a matter of law." We cannot consider this argument, because appellant did not present it to the trial court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Not just any objection will do. It must be both *specific* and *timely* – so that the trial judge would know the particular point being made in time to do something about it." *Jacks v. Commonwealth*, 73 Va. App. 473, 478-79 (2021) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). Accordingly, "[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Fletcher v. Commonwealth*, 72 Va. App. 493, 510 (2020) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).

Here, appellant moved to strike the evidence on the grounds that it was insufficient to establish the "knowing and intentional" elements of the charge and to establish that the video showed appellant "bringing a firearm." His only reference to Gordon's testimony was that there "seemed to be some testimony in dispute even with Mr. Gordon regarding the possession of a gun," and he did not specifically identify the purported dispute. And in arguing the renewed motion, defense counsel focused on whether the evidence showed that appellant possessed anything that met the relevant definition of a "firearm." Although she noted "credibility issues" with Gordon's testimony, defense counsel conceded that she could not provide the trial court

- 4 -

used in the shooting. When we review the sufficiency of the evidence, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "The only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Code § 18.2-308.2 provides that it is unlawful for any person who has been convicted of a felony "to knowingly and intentionally possess or transport any firearm."[4] The Commonwealth may prove violation of this statute by presenting evidence of either actual or constructive possession. *See, e.g.*, *Smallwood v. Commonwealth*, 278 Va. 625, 631 (2009). "It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617,

---

with a "legal basis" for disregarding it. *See Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015) ("[T]his Court will not disturb the fact finder's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999))). To the extent Gordon's testimony was simply inconsistent with other evidence, "decisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder below." *Blevins v. Commonwealth*, 63 Va. App. 628, 634 (2014). Accordingly, we will not consider appellant's argument that Gordon's testimony was inherently incredible as a matter of law.

[4] Appellant does not resurrect on brief the argument he made below regarding the "knowing and intentional" element of the offense.

629 (2019) (alteration in original) (quoting *Pijor*, 294 Va. at 512). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, Gordon identified appellant as the person who shot him. Gumbs confirmed that Gordon was shot at the end of their interaction with appellant and that neither Gumbs nor Gordon touched a firearm that day. Gordon saw a firearm hanging out of appellant's right pocket as appellant approached Gumbs's car, and appellant stated that he was not "here for" the drug exchange before shooting Gordon in the chest.

In addition, the video recordings and still photographs showed appellant handling what the jury could have reasonably inferred—from its size, shape, and location in appellant's right pocket—was a firearm. The video and picture evidence corroborated Baker's and Gordon's testimony about the interaction, and the physical evidence recovered from Gumbs's car supported Gordon's description of his injuries. That physical evidence, combined with the evidence of Gordon's injuries and the testimony of Baker, Gumbs, and Gordon, all supported the jury's conclusion that a firearm was used during the interaction, and its reasonable inference that appellant was the person who possessed and used it. Thus, the evidence, taken as a whole and viewed in the light most favorable to the Commonwealth, was sufficient to support appellant's conviction.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*